# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLIED MEDICAL ASSOCIATES, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | |
| | : | NO. 08-02434 |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY and STATE FARM FIRE | : | |
| AND CASUALTY COMPANY, | : | |
|     Defendants. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                    October 30, 2008

Presently before the court is defendants' motion to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants move to dismiss counts II, III, V, VI, VII and VIII of the Complaint.  For the reasons that follow, the court grants the motion to dismiss with respect to Count VIII, denies the motion to dismiss with respect to Counts III and VII, dismisses Counts V and VI pursuant to plaintiff's request, and accepts defendants' withdrawal of their motion to dismiss with respect to Count II.

## I.      Background

Taking the allegations in the Complaint to be true, as the court must in considering this motion to dismiss, the facts are as follows: Allied Medical Services ("Allied") provides medical care to victims of automobile accidents.  (Compl. ¶ 5.)  After providing care, Allied seeks reimbursement from insurance companies, including State Farm Mutual Automobile Insurance

Company and State Farm Fire and Casualty Company (collectively, "State Farm").  (*Id.* ¶ 7.)
The pending lawsuit centers on Allied's right to reimbursement for medical services that Allied
provided to State Farm insureds.

In October 2007, State Farm began to withhold payment on approximately 126 of
Allied's reimbursement claims.  (*Id.* ¶¶ 15, 37.)  Also in October 2007, State Farm sent a series
of letters to Allied stating that reimbursement claims were "under investigation" and that
payments were suspended pending the outcome of the investigation; some patients received a
copy of the letter concerning their respective billing claim.  (*Id.* ¶¶ 16, 18, Ex. 2.)  In December
2007, State Farm sent Allied a second round of letters asking a series of questions, including a
request for information relating to the credentials of the patients' treating physicians; again,
corresponding copies were sent to Allied's patients.  (*Id.* ¶ 26, Ex. 3.)  Both types of
letters—those sent to Allied and those sent to patients—were sent from State Farm's Special
Investigation Unit ("SIU") and appeared on SIU letterhead.  (*Id.* ¶¶ 21, 26.)[1]  Allied avers that
State Farm's SIU is known in the industry as the division charged with investigating insurance
fraud.  (*Id.* ¶ 14.)  Neither type of letter expressly disclosed the nature of SIU's investigation.  (*Id.*
¶¶ 22, 31.)  In April 2008, State Farm sent a third round of letters directly to Allied's patients,
stating that the patients' provider had "not fully cooperated" and had not supplied the
information required for State Farm to process the billing claim.  (*Id.* ¶ 47, Ex. 10-13.)  In
addition to written correspondence, State Farm had telephone conversations with one or more of
Allied's patients (or patient's counsel), during which State Farm implied that Allied was engaged

---

[1] Exhibit 2 does not support these allegations.  Exhibit 3 does designate the letter's author
as a claim representative of the Special Investigation Unit.

in fraudulent business practices.  (*Id.* ¶ 55.)

After the second wave of letters, Allied's compliance counsel informed State Farm that Allied had already provided the documentation that State Farm requested.  (*Id.* ¶ 33.)  On March 26, 2008, Allied's legal counsel wrote State Farm asking for an explanation as to why Allied's reimbursement requests were not being fulfilled.  (*Id.* ¶ 37, Ex. 4.)  An SIU agent responded on April 10, 2008, stating that a specific analysis of each patient was not conducted, but that he believed several documentation deficiencies were to blame.  (*Id.* ¶ 38, Ex. 5.)  A week later, Allied sent a letter to State Farm requesting an answer to numerous documentation questions so that Allied could furnish the information needed by State Farm to approve all reimbursements.  (*Id.* ¶ 39, Ex. 6.)  State Farm viewed this letter as relating to potential litigation, refused to respond to Allied's questions, and directed all further correspondence to State Farm's counsel.  (*Id.* ¶ 41.)  Subsequent communications between Allied's counsel and State Farm's counsel proved fruitless, and Allied filed this civil action on May 12, 2008.  (*Id.* ¶¶ 43-45.)

The Complaint sets forth eight counts for relief: (I) violation of Pennsylvania's Motor Vehicle Financial Responsibility Law, (II) unjust enrichment, (III) defamation, (IV) intentional interference with business relations, (V) declaratory relief, (VI) injunctive relief, (VII) abuse of process, and (VIII) maintenance.  On June 20, 2008, State Farm filed a motion to dismiss Counts II, III, V, VI, VII and VIII pursuant to Federal Rule of Civil Procedure 12(b)(6).  Allied responded on July 10, 2008 and withdrew counts V and VI.  On July 17, 2008, State Farm filed its reply and withdrew its motion to dismiss with respect to Count II.

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When evaluating a motion

to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's

complaint, and must view any reasonable inferences that may be drawn therefrom in the light

most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v.

Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Id.* 1964-65 (citations and alterations omitted). Furthermore, "[f]actual allegations

must be enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations and

footnote omitted); *see also Phillips*, 515 F.3d at 232.

As this case is before the court on diversity grounds, the court applies the substantive law

of Pennsylvania to determine the elements of the case. *Chin v. Chrysler LLC*, 538 F.3d 272, 278

(3d Cir. 2008).

## III.    Discussion

### A.    Count III:  Defamation

A communication is defamatory if it tends to deter third persons from associating with the

subject of the communication or to harm the subject's reputation by lowering him in the estimation of the community. *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960). Statements that merely embarrass or annoy are insufficient to sustain a claim for defamation. *Scott-Taylor, Inc. v. Stokes*, 229 A.2d 733, 733 (Pa. 1967). To survive a motion to dismiss, the plaintiff must allege: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; and (5) an understanding by the reader or listener of an intent by the defendant that the statement refer to the plaintiff. *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990) (citing 42 Pa. Cons. Stat. § 834(a)(1)-(5) (1988)). Only the first and fourth element are contested. In addition, Pennsylvania law requires that a plaintiff "demonstrate that the statement results from fault, amounting at least to negligence, on the part of the defendant." *Id.* at 923.

## 1. Defamatory Meaning

"It is for the court to determine, in the first instance, whether the statement of which the plaintiff complained is capable of a defamatory meaning; if the court decides that it is capable of a defamatory meaning, then it is for the jury to decide if the statement was so understood by the reader or listener." *Id.* (citing *Corabi v. Curtis*, 273 A.2d 899, 904 (Pa. 1971), *overruled on other grounds by Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6 (1982)); *see also Tucker v. Phila. Daily News*, 848 A.2d 113, 123-24 (Pa. 2004). To ascertain this meaning, the court "'must view the statements in context.'" *Tucker*, 848 A.2d at 124 (quoting *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987)). "[W]ords which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an

5

interpretation unreasonable." *Id.* The court's inquiry "must consider the full context . . . to determine the effect [the statement] is fairly calculated to produce [and] the impression it would naturally engender, in the minds of the average persons among whom it is intended [to reach]." *Id.* (citing *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215-16 (Pa. 1981)). Allied's defamation claim centers on four communications between State Farm and Allied's patients. Although not enumerated in separate counts, Allied alleges that each statement is defamatory. The court will address each statement in sequential order.[2]

### a.   Statement One

The first statement, contained in the first series of State Farm letters, reads: "Please be advised that the above captioned claim is under investigation. As soon as we complete the investigation we will notify you of the outcome and our decision regarding all outstanding medical payments." (Compl. Ex. 2.) A similar statement was at issue in *Arvey Corp. v. Peterson*, 178 F. Supp. 132 (E.D. Pa. 1959). In *Peterson*, the defendant made the following statement in a letter he mailed to the plaintiff's attorney: "A demand for repayment of the above has been delayed, pending completion of the investigation which is still incomplete. This

---

[2] Importantly, Pennsylvania courts have shown a willingness to interpret relatively mild statements as being capable of a defamatory meaning. *See, e.g.*, *Cosgrove Studio & Camera Shop v. Pane*, 182 A.2d 751, 753-54 (Pa. 1962) (holding that advertisement was capable of defamatory meaning because it implied that a competitor was engaged in bad business practices); *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475-76 (Pa. 1960) (holding statement that ex-employee quit "without notice" was capable of defamatory meaning because recipients could conclude that ex-employee "lacked honor and integrity and was not a person to be relied upon insofar as his business dealings were concerned"); *see also Tucker v. Fischbein*, 237 F.3d 275, 282-83 (3d Cir. 2001) (discussing *Birl* and *Cosgrove* and reasoning that Pennsylvania courts have construed mild phrases to be capable of defamatory meanings). The court interprets the statements at issue in this case with this tendency in mind.

involves areas of possible serious liability concerning your client.  We are still awaiting the opinion of the Federal District Attorney."  *Id.* at 135.  The court reasoned, in evaluating the defendant's motion to dismiss, that "[w]hile a charge of overdrawing an account may be perfectly innocent, the use of the additional words 'possible serious liability' and 'we are still awaiting the opinion of the Federal District Attorney' are reasonably capable of imputing criminal conduct on the part of the defendant . . . ."  *Id.*

The language State Farm used in its letter is considerably less forceful than that used in *Peterson*.  The letter is from a claims representative and only suggests that State Farm has been delayed in completing its paperwork and wants to keep the insured informed as to the status of the claim.  Allied alleges that the letter was written on SIU letterhead (Compl. ¶¶ 21, 26, 50), but the document Allied has submitted as an exhibit does not support its allegation (*Id.* Ex. 2).  Thus, when viewed in its context, the statement made in the first letter is not capable of a defamatory meaning and is therefore not actionable.

**b.    Statement Two**

The second series of letters requests information from Allied regarding the recipients' treating physicians.  (Compl. ¶¶ 24-26.)  Allied alleges that requesting physician information, especially information concerning physician licenses, implies that "Allied was improperly issuing medical reports, using unlicensed professionals, improperly prescribing treatment, [and/or] providing unnecessary [or] inappropriate medical care for an improper purpose."  (*Id.* ¶ 30.)  To support this, Allied notes that the letter's author is identified as an SIU claim representative.  (*Id.* ¶ 26, Ex. 3.)  If the inquiry focused solely on the content of the second letter, the court

7

acknowledges that an inferential leap is necessary to reach Allied's conclusion.  But, this letter is second in the sequence of correspondence from State Farm, and Allied avers that a segment of its patients received copies of both letters.  (*Id.* ¶ 32.)   Thus, some recipients of the second letter already had notice of the investigation, which could color their interpretation of the second letter. The sequence of events supports Allied's assertion that the letter would tarnish a recipient's opinion of Allied's business practices.  Moreover, the letter reveals that the investigation has now been referred to the SIU for investigation and includes a series of four detailed questions which suggest concern about the qualifications of Allied's treating physicians.  Allied avers that the SIU department at State Farm is synonymous with fraud investigation.  (*Id.* ¶¶ 21, 28, 50.)  Assuming this to be true as I must, patients could infer that State Farm refused to remit payments because Allied was being investigated for fraudulent business practices.[3]  This implication could injure Allied in its "business or profession."  *Corabi*, 273 A.2d at 904.  In addition, a segment of the recipients included attorneys, trained to examine the nuance and context of language.  Some

_____

[3] State Farm notes that the Pennsylvania Supreme Court has not formally recognized the concept of defamation by implication.  *See Fanelle v. Lojack Corp.*, 2000 WL 1801270, *2 (E.D. Pa. 2000) (noting that court found itself "in essentially uncharted territory" regarding whether Pennsylvania law supported a defamation by implication cause of action).  Nonetheless, the *Fanelle* court acknowledged that the "Superior Court of Pennsylvania has held that 'the literal accuracy of separate statements will not render a communication 'true' where, as here, the *implication* of the communication as a whole was false.'"  *Id.* (quoting *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982)) (emphasis in original); *see also Capozzi v. Lucas*, 2004 WL 5572908, *9 (M.D. Pa. 2004), *aff'd* 148 Fed. App'x 138 (3d Cir. 2005); *Franklin Prescriptions, Inc. v. New York Times, Inc.*, 267 F. Supp. 2d 425, 435 (E.D. Pa. 2003). Moreover, the court reviewed circuit court treatment and found that defamation by implication was a valid legal theory in at least four other circuits.  *Id.* at *3; *see Toney v. WCCO Television*, 85 F.3d 383, 386-87 (8th Cir. 1996); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-93 (4th Cir. 1993); *White v. Fraternal Order of Police*, 909 F.2d 512, 518-21 (D.C. Cir. 1990).  This reasoning is persuasive. Thus, although the truth of the statements is not yet at issue, the court finds that defamation by implication is a complex, but cognizable legal theory.

attorneys may interpret the statement as merely informative.  Others, especially those representing clients in insurance matters, may have interpreted the phrase "under investigation" by an SIU claim representative to have negative connotations.  Here, the attorneys were handling insurance matters for Allied's patients and could interpret the statements to imply that Allied was engaged in some type of insurance fraud.

Therefore, although the letter can be interpreted as a simple request for information, the court finds the statement is capable of a defamatory meaning when analyzed in the relevant context.

### c.      Statement Three

The third group of letters were sent in April 2008.  Some of the letters in this group were sent directly to Allied, with copies sent to patients or their attorneys; other letters in this group were sent directly to patients or their attorneys.  Allied has attached several versions of the letters in this group, which read in part:

> Version #1:We have attempted to verify these services and the charges through requests to both yourself and the provider for additional information.  Although you cooperated . . . the provider has not fully cooperated.  (*Id.* ¶ 47, Ex. 13) (sent directly to patient/attorney).

> Version #2: This letter is a follow up to our letter dated March 18[], 2008.  To date, I have not received this information despite my repeated attempts.  Unless we receive this information and your cooperation within 30 days of the date of this letter, State Farm will be unable to consider your bills for payment.  (*Id.* Ex. 10) (sent to Allied, copy to patient/attorney).

> Version #3: I have contacted you [previously] to obtain information necessary to adjust claims submitted for the above loss.  We asked that you forward to us the identity of the physician who performed the initial examination of the patient and prepared the initial report. . . .  We also asked that you identify the physician that

prescribed/ordered the patient's chiropractic treatment and therapy and the identity of the person(s) administering the therapy and if these individuals are licensed professionals. . . . To date, I [State Farm] have not received this information from you despite my repeated attempts . . . . (*Id.* Ex. 11.; *see id.* Ex. 12) (sent to Allied, copy to patient/attorney).

Again, the letters were sent by a claim representative of the SIU, reminding recipients (some for a third time) that Allied was under investigation. Whether this third letter is actionable turns on two issues: First, statements that reflect State Farm's opinion are actionable only if such statements imply the existence of underlying facts. *Parano v. O'Connor*, 641 A.2d 607, 609 (Pa. Super. Ct. 1994). Second, as with all other statements at issue in this case, statements made in this third series of letters must be capable of a defamatory meaning.

The court turns first to the letter sent directly to patients (version one above), as this letter contains State Farm's opinion regarding Allied's cooperation with State Farm's information requests. In considering whether the letter implies the existence of underlying facts, the court notes that this letter resembles statements discussed by the *Parano* court. In *Parano*, a healthcare company executive told a newspaper that an administrator at a second healthcare company was "adversarial," "uncooperative" and "less than helpful" during a business negotiation. *Id.* The *Parano* court held that the comments were, in the relevant context, statements of opinion not capable of a defamatory meaning. *Id.* (noting statements were "far less offensive" than necessary to survive motion to dismiss). Because the portion of the letter that contained the phrase "uncooperative" reflects State Farm's opinion of Allied's behavior, the statement is actionable only if, as previously mentioned, it implied the existence of underlying facts. *See Parano*, 641 A.2d at 609. In *Parano*, the court reasoned that, in the business negotiation context,

10

use of the word "uncooperative" "only revealed [the speaker's] subjective interpretation" of the situation. *Id.* As a result, the court held that the statement did not imply the existence of underlying facts. *Id.* Here, however, the statements relate directly to whether Allied proffered the information State Farm requested. By stating that Allied was "uncooperative," State Farm is implying that Allied had not furnished the necessary information. In fact, the word "uncooperative," as used in the letter, indicates to recipients that State Farm still seeks necessary documentation. Unlike *Parano*, the statement does not reflect an opinion as to another's conduct in the course of a negotiation; rather, the statement applies specifically to a particular factual issue—whether Allied had furnished documents necessary to approve billing requests. The statement of opinion implies an underlying factual basis; therefore, the use of the word "uncooperative" in this context is actionable.

The second issue is whether the statements contained in the third group of letters are capable of a defamatory meaning. Focusing first on the letter sent directly to Allied's patients, the court again finds *Parano* instructive. As discussed above, the *Parano* court also found that the statements at issue in that case were not capable of a defamatory meaning. Although State Farm's statement is similar to the language at issue in *Parano*, there is a significant contextual difference between this case and *Parano*. In *Parano*, the speaker was a business-person who had engaged in a failed arms-length business negotiation with the subject of the statements. *Id.* at 608. Here, the relevant speaker is SIU, a department allegedly specializing in fraud investigation. As a result, the inference recipients of the letter could draw differs from the inferences available in *Parano*. After reading that Allied was not cooperating, a recipient may believe that Allied's non-compliance was tantamount to or evidence of fraud. At the least,

readers may infer that Allied's business practices are inefficient or incompetent.  Any of these inferences do more than merely embarrass or annoy Allied.  Rather, the inferences would strike at the heart of Allied's business reputation, unjustifiably so, if the statements are false.  Viewed through this lens, this letter is capable of a defamatory meaning.

Likewise, in the letters sent to Allied (versions two and three above), State Farm's continuing attempts to acquire information from Allied can be interpreted to suggest that Allied has been uncooperative and evasive.  The fact that the letters were again sent from an SIU claim representative bolsters the potential for this interpretation.  Therefore, the court finds that these letters also are capable of a defamatory meaning.

### d.    Statement Four

The fourth statement, allegedly made by a State Farm employee to at least one patient's attorney during a telephone conversation, is capable of a defamatory meaning.  Specifically, the employee articulated a phrase similar to the following: "[W]e [State Farm] are not going to disclose anything but we think there is something there . . . ."  (Compl. ¶ 55.)  The statement is one of opinion; as such, the statement is actionable only if it implied the existence of underlying facts.  *See Parano*, 641 A.2d at 609.  Assuming the employee's actual statement is consistent with the statement Allied pleaded, the State Farm employee explicitly cites to the existence of an underlying factual predicate—information that the employee was unwilling to "disclose." Accordingly, couching the statement as an opinion does not preempt potential liability for defamation.  And, because the statement clearly implies impropriety on Allied's part, it is capable of a defamatory meaning.

12

Thus, all four statements on which Allied grounds its defamation claim are actionable, because each statement is capable of a defamatory meaning that would tend to lower Allied's reputation in the community.

### 2.      Fault

Finally, Allied has the burden of proving that State Farm was at fault, amounting to at least negligence, when making these statements. *U.S. Healthcare*, 898 F.2d at 926.  In its motion, State Farm challenges paragraph ninety-four of Allied's Complaint, which reads: "Defendants have acted negligently, recklessly, wantonly, willfully, deliberately and/or maliciously."  (Compl. ¶ 94.)  Although Allied does not assert a negligence count in its Complaint, State Farm argues that this allegation of negligence should not stand because State Farm owes Allied no duty of care.  The court finds that Allied has not raised a negligence claim independent of the defamation count.  State Farm's argument is best viewed as an attack on the sufficiency of Allied's defamation claim as it relates to the element of fault.  This argument fails. Under Pennsylvania law, whether the defendant owes the plaintiff a duty of care is a question of law and ultimately a question of foreseeability. *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993).  State Farm voluntarily made statements that were traceable to Allied; when making such statements, State Farm must act with reasonable care because it is foreseeable that false statements (or false implications) could injure Allied's business and reputation.  Thus, the court finds that, in choosing to issue statements about Allied, State Farm owed a duty of care. Whether State Farm has breached this standard of care is a question of fact to be decided by a jury.

In summary, the court finds that Allied has sufficiently alleged that State Farm made statements capable of a defamatory meaning and was at least negligent in doing so.  Therefore, the court will deny State Farm's motion to dismiss with respect to Allied's defamation claim.

**B.      Count VII:  Abuse of Process**

In Count VII, Allied asserts an abuse of process claim.  Several of Allied's patients are currently involved as plaintiffs in civil litigation arising from their motor vehicle accidents. (Compl. ¶ 107), and State Farm, the insurer of the defendants in these civil actions, has appointed counsel to represent its insureds.  (*Id.* ¶ 112.)  Allied avers that State Farm's appointed counsel, at the direction of State Farm, is issuing subpoenas and taking depositions in these cases to investigate and harass Allied and to drive it out of business.  (*Id.* ¶ 117.)

The Supreme Court of Pennsylvania has reasoned that "'[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it.'" *Gen. Refractories v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003) (citing *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)).  To support an abuse of process claim, the plaintiff must establish that "'the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm[ed] . . . the plaintiff'" as a result.  *Hart v. O'Malley*, 647 A.2d 542, 551 (Pa. Super. Ct. 1994), *aff'd* 676 A.2d 222 (Pa. 1996) (quoting *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)). The plaintiff must allege "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . [;] there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even [if

14

done] with bad intention." *Id.* at 552 (quoting *Shafer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984)). "[T]he point of liability is reached when 'the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure.'" *Gen. Refractories*, 337 F.3d at 308 (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 882 (Ariz. Ct. App. 1982)). To survive a motion to dismiss, the complaint must "factually set forth that the [process] was used for a purpose other than that for which [the process is] intended." *Hart*, 647 A.2d at 552.

First, Allied must show that State Farm used "process." Process has been defined broadly by Pennsylvania courts, "'and encompasses the entire range of procedures incident to the litigation process.'" *Rosen*, 627 A.2d at 192 (quoting *Nienstedt*, 651 P.2d at 880). Specifically, "process" includes the use of depositions, subpoenas, requests for production of documents and other discovery tools. *Id.* In its complaint, Allied alleges that State Farm employed depositions, subpoenas and document requests. (Compl. ¶ 117.)[4] Allied asserts that State Farm accomplished this through the law office of Goldberg, Miller & Rubin ("GMR"), which State Farm appointed to represent its insureds in pending civil actions. Allied alleges that State Farm directed GMR to use discovery procedures to obtain information from Allied. (*Id.* ¶¶ 115-16, 120.) Assuming these facts to be true, the combined efforts of State Farm and the attorneys at GMR constitute the

---

[4] In addition, Allied avers that State Farm refused to settle cases and took unnecessary appeals to lengthen the period of time that discovery tools were available. (Compl. ¶ 120.) Allied appears to be link these tactical decisions to the use of discovery tools. (*Id.*) Construed this way, the averment provides context. But, to the extent that Allied relies on these decisions as an independent basis for its abuse of process claim, Allied's factual averments are insufficient. There is nothing to suggest that Allied was a party to any of the civil actions cited in the Complaint. Therefore, even if settlement negotiations and appeals fall into the broad definition of "process," State Farm has not "used" theses processes against Allied.

use of process.  *See Rosen*, 627 A.2d at 192.  Therefore, Allied has pleaded facts sufficient to

satisfy the first element of an abuse of process claim.

 The second element is the perversion of the legal process. Allied avers that State Farm

employed discovery mechanisms in these cases where Allied was not a party to (1) harass Allied,

(2) cause it unnecessary expense, and (3) ultimately uncover a reason to avoid remitting

reimbursement payments to Allied.  (Compl. ¶ 117.)  The Third Circuit has acknowledged that

the use of process to harass, delay litigation, and drain pecuniary resources "if severe enough,

could constitute perversions of the legal process."  *Gen. Refractories*, 337 F.3d at 308.  In

*General Refractories*, the Third Circuit further reasoned that averments detailing "the purposes

of draining resources and delaying litigation likely would satisfy the perversion element."  *Id.* at

309.  Allied specifically alleges:

> Upon information and belief, in the above referenced Civil Actions (and possibly
> others), [GMR] has repeatedly issued subpoenas to Allied seeking production of
> records, depositions of Allied Personnel and depositions of medical service providers
> associated with Allied in an effort to (1) harass Allied; (2) cause unnecessary expense
> to Allied; and (3) [uncover] some justification not to pay Allied first party insurance
> benefits at issue in this case.

(Compl. ¶ 117.)[5]  Allied's allegations are vague and somewhat conclusory, but they are

congruent with the reasoning and examples detailed in *General Refractories*.  337 F.3d at 309.  In

light of this and mindful of the court's duty to construe Allied's complaint liberally, the facts

alleged do indicate that State Farm employed discovery tools in these cases where Allied was not

a party for reasons other than the intended purpose, i.e. to harass Allied, drain its resources and

---

 [5] Allied references harassment in other averments, but paragraph 117 is the clearest
articulation of Allied's argument.

investigate its business practices; thus, Allied has fulfilled its pleading requirement with respect to the second element.

Finally, Allied asserts that State Farm's use of process has caused injury.  Aside from harassment, State Farm's use of discovery tools has continued to shield State Farm from remitting reimbursement payments to Allied while also allowing State Farm to investigate Allied's business practices in search of a cognizable reason to avoid payment.  (Compl. ¶¶ 117-20.)  Therefore, Allied's complaint satisfies the pleading requirement for the third element.

Because Allied's complaint supplies facts sufficient to support a claim for abuse of process, State Farm's motion to dismiss Count VII of the complaint will be denied.

## C.      Count VIII:  Maintenance

Maintenance is an "'officious intermeddling in a lawsuit by a non-party by maintaining, supporting or assisting either party, with money or otherwise, to prosecute or defend the litigation.'"[6]  *Clark v. Cambria County Bd. of Assessment*, 747 A.2d 1242, 1245 n.4 (Pa.

---

[6] Pennsylvania courts still recognize the common law doctrines of maintenance and champerty.  *See Clark v. Cambria County Bd.of Assessment*, 747 A.2d 1242, 1246 (Pa. Commw. Ct. 2000).  Historically, both doctrines were raised as a defense.  *See, e.g.*, *Kenrich Corp. v. Miller*, 377 F.2d 312 (3d Cir. 1967) (champerty raised as defense); *Belfonte v. Miller*, 243 A.2d 150 (Pa. Super. Ct. 1968) (same); *Clark*, 747 A.2d at 1246 (noting champerty and maintenance can be raised as a defense).  An aggrieved party can also seek injunctive relief.  *See Westmoreland County v. RTA Group, Inc.*, 767 A.2d 1144, 1146, 1151 (Pa. Commw. Ct. 2001) (affirming Court of Common Pleas grant of injunctive relief); *Westmoreland County v. Rodgers*, 693 A.2d 996, 1000 (Pa. Commw. Ct. 1997) (same).  But, upon review of Pennsylvania case law, it is uncertain whether Pennsylvania recognizes maintenance as a cause of action for monetary damages.  Moreover, even if maintenance was at one time an independent cause of action in Pennsylvania, it is uncertain whether such a cause of action would have been superseded by the modern-day torts of abuse of process, malicious prosecution, and wrongful use of civil proceedings.  Other courts confronted with the issue have noted that the torts of maintenance and champerty have been engulfed by these modern-day causes of action.  *See, e.g.*, *Sec.*

Commw. Ct. 2000) (quoting *Black's Law Dictionary* (6th ed. 1990)).[7] "Officious intermeddling"

is "meddl[ing] with the affairs of others" where such involvement "is neither asked nor needed."

*See Webster's Third New Int'l Dictionary* 1180, 1567 (1981) (defining "intermeddle" and

"officious").[8] Aside from pleading facts to support a finding of "officious intermeddling," a

plaintiff must also allege "malicious, dangerous or illegal intermeddling with other parties'

litigation." *Gould v. Brock*, 69 A. 1122, 1122 (Pa. 1908) (per curiam).

In Count VIII of its Complaint, Allied essentially has repackaged its abuse of process

claim as one for maintenance, arguing that State Farm's involvement in its insureds lawsuits

---

*Underground Storage, Inc. v. Anderson*, 347 F.2d 964, 969 (10th Cir. 1965) ("It is generally accepted that a cause of action for damages arising out of the common-law doctrine of champerty and maintenance as it was then known, is not now recognized."); *Hardick v. Homol*, 795 So.2d 1107, 1111 (Fla. Dist. Ct. App. 2001) (discussing other states' approach to issue and concluding that modern day causes of actions provide sufficient protection); *McCullar v. Credit Bureau Sys., Inc.*, 832 S.W.2d 886, 887 (Ky. 1992) ("Modern remedies for damages are to be pursued through such tort actions as malicious prosecution, abuse of process, or wrongful initiation of litigation."); *Tosi v. Jones*, 685 N.E.2d 580, 583 (Ohio Ct. App. 1996) (noting that the "cause of action has, in modern times, been supplanted by the tort actions for malicious prosecution and abuse of process[,]" along with other state statutory causes of action). Although the court finds it likely that Pennsylvania will adopt this approach, the court need not reach the issue and will assume that such a cause of action exists.

[7]Claimants often raise the common law doctrines of champerty and maintenance together. Champerty is a form of maintenance, involving a "bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Clark*, 747 A.2d at 1245 n.4 (quoting *Black's Law Dictionary* (6th ed. 1990)). To state a cause of action for champerty, a plaintiff must show that the defendant (1) had no legitimate interest in the suit; (2) expended her own money in prosecuting the claim; and (3) was entitled to recover a portion of the proceeds from the claim. *Id.* at 1245 (citing *Belfonte v. Miller*, 243 A.2d 150, 152 (Pa. Super. Ct. 1968)). Allied does not raise a champerty claim.

[8] "Officious" is defined as: "volunteering one's services where they are neither asked nor needed. *Webster's Third New Int'l Dictionary* 1567 (1981)*. "Intermeddle" is defined as: "meddl[ing] with the affairs of others." *Id.* at 1180.

constitutes an officious intermeddling.  This argument fails.  First, a relationship exists between

State Farm and its insureds—State Farm has a contractual duty to provide representation and has

an immediate stake in the outcome of the litigation, namely, indemnification of liability.[9]  *See,*

*e.g.*, *Diaz v. Yellow Freight Sys., Inc.*, 34 Pa. D. & C.3d 364, 368 (Ct. Compl. Pl.1984)

(reasoning that insurance carrier could proceed with appeal of case in which it represented its

insured at trial regardless of whether insurance carrier was concerned with effect of outcome on

other pending litigation, because insurance carrier was not stranger to case).  Allied

acknowledges this relationship, conceding that State Farm is under a duty to appoint and has

appointed counsel to represent those whom State Farm insures.  (Compl. ¶ 112.)  Thus, State

Farm has a legitimate interest in the case and is by no means unilaterally injecting itself into the

litigation.  The pleaded facts simply do not show that State Farm is meddling in the affairs of

others who have not asked for State Farm's assistance.   Second, Allied has not pleaded facts

sufficient to support a finding that the State Farm's actions are malicious, dangerous or illegal, as

required by Pennsylvania law.

Therefore, even if maintenance exists as a cause of action for damages in Pennsylvania,

Allied has failed to plead facts sufficient to establish a maintenance action.  Accordingly, the

motion to dismiss Count VIII of Allied's complaint will be granted.

**IV.    Conclusion**

---

[9] The Pennsylvania courts have long abandoned previous contempt for insurance
contracts.  Over 100 years ago, the Pennsylvania Supreme Court acknowledged that "[t]here was
a time when all insurance . . . was looked upon with suspicion and disfavor[,]" but "[t]hat time
has long gone by."  *Gould*, 221 Pa. at 40 (holding that automobile insurer did not engage in
maintenance by defending its insured against action for personal injuries).

For the reasons stated above, the court will grant in part and deny in part State Farm's motion to dismiss.  The motion will be granted with respect to Count VIII, and the court will dismiss this claim with prejudice.  The court will deny the motion to dismiss Counts III and VII. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLIED MEDICAL ASSOCIATES,                  :
                                            :
    Plaintiff,            :
                                            :
                                            :          CIVIL ACTION
    v.                    :
                                            :
                                            :          NO. 08-02434
STATE FARM MUTUAL AUTOMOBILE                :
INSURANCE COMPANY and STATE FARM FIRE       :
AND CASUALTY COMPANY,                       :
                                            :
    Defendants.

## Order

    **AND NOW** this 30th day of October 2008, upon consideration of defendant State Farm's motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff Allied's Complaint, Allied's response thereto and State Farm's reply, **IT IS HEREBY ORDERED** that:

1.    Pursuant to plaintiff's request, Allied's declaratory and injunctive relief claims, Counts V and VI respectively, are **DISMISSED** with prejudice.

2.    Pursuant to defendants' request, State Farm's motion to dismiss plaintiff's unjust enrichment claims, Count II, is withdrawn.

3.    State Farm's motion is **DENIED** as to the defamation and abuse of process claims, Counts III and VII respectively, of the Complaint.

4.    State Farm's motion is **GRANTED** as to the maintenance claim in Count VIII of the Complaint.  State Farm's maintenance claims are **DISMISSED** with prejudice.

<u>s/ William H. Yohn Jr., Judge</u>
William H. Yohn Jr., Judge