# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ALLIED MEDICAL ASSOCIATES,<br>　　Plaintiff,<br><br>　　v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY,<br>　　Defendants/Counterclaim-Plaintiffs,<br><br>　　v.<br><br>ALLIED MEDICAL ASSOCIATES, DAVID KIRSTEIN, D.C., and BRYAN EHRLICH, D.C.,<br>　　Counterclaim-Defendants. | CIVIL ACTION<br><br>NO. 08-2434 |

## Memorandum and Order

YOHN, J.                                                                                                                          April 16, 2009

On May 23, 2008, Allied Medical Associates ("Allied") commenced this civil action against State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm"). Allied seeks, *inter alia*, reimbursement for medical procedures it allegedly provided to State Farm's insureds. State Farm answered Allied's complaint on November 11, 2008, raising several affirmative defenses and asserting a counterclaim against Allied, David Kirstein and Bryan Ehrlich[1] (collectively, "counterclaim-defendants"). Presently before the court is counterclaim-defendants' motion to dismiss State

---

[1] The counterclaim also named Brent Weinerman, D.O and Najmi Sheikh, M.D. as defendants, but both Weinerman and Sheikh were dismissed as defendants on November 19, 2008.

1

Farm's counterclaim and certain affirmative defenses for failure to state a cause of action upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, I will grant in part and deny in part counterclaim-defendants' motion.

I.      **Factual and Procedural Background**

State Farm's counterclaim asserts three counts against Allied, Kirstein and Ehrlich: (I) fraud; (II) statutory insurance fraud under 18 Pa. Con. Stat. § 4117; and (III) unjust enrichment. To support these counts, State Farm makes the following allegations, which the court must accept as true for purposes of a motion to dismiss.  State Farm, an insurer, provides its customers insurance coverage for medical expenses that arise out of automobile accidents.  (Countercl. ¶ 1.) Allied operates a business that provides "chiropractic, medical, diagnostic, and/or physical therapy treatment, testing, services and/or goods . . . ." (*Id.* ¶ 2.)  David Kirstein, D.C. and Bryan Ehrlich, D.C. serve as "proprietor[s], owner[s], officer[s], agent[s] and/or shareholder[s] of Allied." (*Id.* ¶¶ 3-4.)

State Farm contends that counterclaim-defendants are engaged in a form of insurance fraud that began in 2003 (if not earlier). (*Id.* ¶ 30.)  Specifically, counterclaim-defendants are "active participants in a conspiracy and scheme to defraud [State Farm] by doing acts including, but not limited to, producing and submitting false, misleading, inaccurate and/or fraudulent medical records, reports, bills, and/or other documents . . . ." (*Id.* ¶ 11.)  The scheme is aimed at inducing State Farm to reimburse counterclaim-defendants for, *inter alia*, unnecessary medical services allegedly provided by counterclaim-defendants.  (*Id.* ¶ 12.)  To further their scheme, counterclaim-defendants instituted an incentive system, which offered incentives to "employees and/or agents" who would "provide unnecessary, inappropriate and/or unreasonable treatment."

(*Id.* ¶ 21.)

State Farm alleges that counterclaim-defendants conducted their insurance fraud scheme as follows: Counterclaim defendants would solicit individuals who were involved in motor vehicle accidents. (*Id.* ¶¶ 16-17.) Those who chose to treat at Allied were "placed on a standardized and predetermined treatment plan[,]" which included "physical therapy and/or chiropractic treatment, electromyography (EMG) and nerve conduction testing, orthopedic consultation and/or other testing . . . ." (*Id.* ¶ 19.) The treatment plan was not implemented for the benefit of the patient, but rather "for the financial benefit of Counterclaim Defendants and/or other entities and/or individuals and/or to support past and future treatment and services and/or to support uninsured, underinsured and liability claims brought by individuals who treated at Allied . . . ." (*Id.*) Counterclaim-defendants did not provide many of the procedures for which they sought reimbursement and certain procedures counterclaim defendants did provide were not medically necessary. (*Id.*) State Farm cites seventeen bills submitted by counterclaim-defendants that sought reimbursement for treatment that Allied did not, in fact, provide to patients. (*Id.*) State Farm also cites four examples where counterclaim-defendants provided medical treatment that was inconsistent with the patients' injuries. (*Id.* ¶ 25.) In addition to Allied's own provision of unnecessary treatment, counterclaim-defendants also referred patients to other healthcare providers to receive unnecessary treatment and medical tests. (*Id.* ¶¶ 21-22.)

To obtain reimbursement from State Farm, counterclaim-defendants prepared, or had other Allied employees prepare, "fraudulent, misleading, and/or inaccurate . . . medical reports, bills and/or other documents . . . ." (*Id.* ¶ 24; *see id.* ¶ 11.) Counterclaim-defendants obtained reimbursement by using "current procedural terminology" codes in their billing forms to classify

3

the medical procedures for which they sought reimbursement.² (*Id.* ¶ 28.) State Farm relied on these codes when it assessed and granted counterclaim-defendants' reimbursement requests. (*Id.*) As a result of counterclaim-defendants' fraud, which State Farm avers occured in all (or at least many) of the reimbursement requests,³ (*id.* ¶ 33), State Farm has paid at least $2,000,000 to counterclaim-defendants, (*id.* 31).

On May 23, 2008, Allied filed its complaint against State Farm. In its complaint, Allied asserts several state law claims centering on State Farm's refusal to remit payment to Allied in satisfaction of Allied's reimbursement requests. Prior to answering, State Farm filed a counterclaim against Allied. (Doc. No. 22.) On November 12, 2008, counterclaim-defendants filed a motion to dismiss and/or strike State Farm's first counterclaim, arguing that State Farm's counterclaim was procedurally improper. (Doc. No. 41.) By order of March 26, 2009, I granted counterclaim-defendants' motion and dismissed State Farm's first counterclaim.

State Farm filed its answer on November 11, 2008. (Doc. No. 37.) The answer raised several affirmative defenses and incorporated by reference the language of the counterclaim originally (but improperly) filed as Doc. No. 22. (*See* Answer at 26.) On November 17, 2008, counterclaim-defendants filed a second motion to dismiss, seeking to dismiss State Farm's counterclaim and several of State Farm's affirmative defenses. (Doc. No. 44.) State Farm filed its response to Allied's second motion to dismiss on December 15, 2008, and later, with the court's permission, supplemented its response on December 18, 2008. Counterclaim-defendants

---

² Under this system, a medical provider assigns a current procedural terminology code to each medical procedure administered. (Countercl. ¶ 28.)

³ The counterclaim does not identify or approximate the number of reimbursement requests that are at issue.

filed a reply on January 2, 2009. On February 24, 2009, counterclaim-defendants supplemented their motion to dismiss; State Farm responded on March 13, 2009. Thus, the issues presented by counterclaim-defendants' motion are ripe for review.

## II.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.[4] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* 1964-65 (citations and alterations omitted). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the

---

[4] In addition to the allegations contained in the complaint, "courts generally consider . . . exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations and footnote omitted); *see also Phillips*, 515 F.3d at 232.

### III. Discussion

#### A. Rule 9(b) Pleading Standard

Counterclaim-defendants' central assertion in their motion is that State Farm's counterclaim does not satisfy Federal Rule of Civil Procedure 9(b). The Federal Rules of Civil Procedure create a system of pleading whereby the particularity with which litigants must state their claims varies with the substance of their assertions. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Pro. 9(b). By pleading with particularity, a plaintiff places defendants "on notice of the precise misconduct with which they are charged, and . . . safeguard[s] defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

"Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quoting *Seville*, 742 F.2d at 791). A plaintiff must also "allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* Nevertheless, the Third Circuit has cautioned against "focusing exclusively on [Rule 9(b)'s] 'particularity' language" because such a focus is "'too narrow an approach [that] fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Seville*, 742 F.2d at 791 (quoting *Christidis v. First Pa. Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983) (quoting 5 C. Wright & A. Miller, *Federal Practice and*

*Procedure* § 1298, at 407 (1969))). Instead, the court must evaluate whether the complaint "adequately describes the nature and subject of the alleged misrepresentation." *Id.*

### 1. Count I: Common Law Fraud

Counterclaim defendants argue that State Farm's fraud claim consists of boilerplate language that does not satisfy Rule 9(b)'s heightened pleading standard. Specifically, counterclaim-defendants direct my attention to State Farm's repeated use of the term "and/or," arguing that the term renders many of State Farm's allegations overly vague. State Farm contends that its allegations are sufficient to establish the elements of fraud. I find that, though State Farm's counterclaim is not a picture of clarity, State Farm has pleaded certain facts that support a fraud claim as to some of counterclaim-defendants' reimbursement requests. Therefore, I will grant in part and deny in part counterclaim-defendants' motion to dismiss Count I.

Under Pennsylvania law, the "'essential elements of a cause of action for fraud or deceit are a misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifiable reliance thereon and damage as a proximal result.'" *The Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 929 (Pa. Super. Ct. 2004) (quoting *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991)). Turning to State Farm's allegations, I first find that State Farm has alleged, with a sufficient level of particularity, counterclaim-defendants' purported insurance fraud scheme. Specifically, State Farm asserts that counterclaim-defendants (1) solicit accident victims to treat at Allied's facilities, (*id.* ¶¶ 16-18); (2) place new patients on a predetermined and standardized treatment program, (*id.* ¶ 19); (3) order procedures that are not medically necessary or that are not actually performed, (*id. passim*); (4) offer incentives to those

7

who participate in their scheme, (*id.* ¶ 20); and (5) submit reimbursement requests to State Farm that are inflated artificially by the costs of the unnecessary and/or unperformed medical procedures, (*id.* ¶¶ 24-28). Finally, State Farm contends that counterclaim-defendants acted knowingly and with the intent to induce[5] State Farm to reimburse them for the unnecessary and/or unperformed procedures. (*Id.* ¶¶ 12, 25, 36.) Accepting these allegations to be true, as I must for purposes of this motion, these allegations sufficiently demonstrate the framework of a scheme to commit insurance fraud. An alleged framework, however, is not enough to make out, with particularity, a claim for fraud. Rather, to satisfy Rule 9(b), State Farm must make allegations as to the misrepresentation(s) that counterclaim-defendants allegedly "uttered."

The remaining Rule 9(b) issue, then, concerns the purported fraudulent misrepresentation(s). *See Lum*, 361 F.3d at 224 (requiring plaintiff to plead the "general content" of the misrepresentation itself). Although State Farm adequately sketches the alleged scheme, I find that State Farm is far less precise in pleading the fraudulent misrepresentation(s) on which its fraud claim is premised. This much is clear: State Farm avers that the fraudulent misrepresentations appeared in the reimbursement requests "and/or" other similar documents it received from counterclaim-defendants. (Countercl. ¶¶ 24-28.) The court, however, is only able to discern the "general content" of the misrepresentation(s) with respect to those reimbursement requests listed in paragraphs nineteen or twenty-five or both of State Farm's counterclaim. Paragraph nineteen states in part:

> [T]he following persons for whose treatment bills were submitted by Allied to [State Farm] *did not receive* the treatment documented in the records and bills

---

[5] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b).

>submitted to the Counterclaim Defendants [sic]:
>>a) RODGR000
>>b) GIDMA000
>>c) SIMKE002 . . . .

(*Id.* ¶ 19 (listing, by identification code, seventeen total reimbursement requests) (emphasis added and footnote omitted)). Although this averment does not itemize which procedures were not performed, it does identify both the reimbursement request at issue (i.e., the specific billing code) and the alleged fraudulent nature of that request (i.e., that the requests sought reimbursement for medical procedures that were not performed). *See Seville*, 742 F.2d at 791 (holding, in case involving fraud in the sale of equipment, that exhibits detailing "which pieces of equipment were the subject of which alleged fraudulent transaction" satisfied Rule 9(b) even though the complaint did "not describe the precise words used" in the purported misrepresentation). In addition to paragraph nineteen, paragraph twenty-five lists four patients who allegedly received unnecessary treatment.[6] As with those patients listed in paragraph nineteen, State Farm has averred with particularity the billing number and the purported fraudulent misrepresentation contained therein for all four patients listed in paragraph twenty-five.

In connection with these averments, State Farm also asserts that counterclaim-defendants each produced or directed the production of the documents submitted to State Farm. (Countercl. ¶ 11, 24-25, 28.) This allegation links each of the individual counterclaim-defendants to the particular fraudulent representations at issue. *See Lum*, 361 F.3d at 224 (requiring plaintiff to

---

[6] Three of the four patients listed in paragraph twenty-five are also listed in paragraph nineteen, but patient "SOUMA001," who allegedly received unnecessary left arm treatment, is not.

plead the person(s) who made the alleged misrepresentations).  Moreover, as counterclaim-defendants are presumably aware of the procedures they performed on particular patients and those procedures for which they sought reimbursement, I find that State Farm's pleading places counterclaim-defendants on notice of the specific misconduct State Farm alleges.  Thus, because paragraphs nineteen and twenty-five place counterclaim-defendants on notice and "adequately describe[] the nature and subject of the alleged misrepresentation," I find that State Farm has satisfied Rule 9(b)'s heightened pleading requirement for the reimbursement requests listed in these two paragraphs.  *Seville*, 742 F.2d at 791.

To the extent that State Farm seeks recovery based on reimbursement requests not listed in paragraphs nineteen or twenty-five or both, State Farm has not pleaded fraud with the particularity required by Rule 9(b).  Indeed, State Farm lumps together all non-enumerated reimbursement requests, averring that "all, or in the alternative, many" of the reimbursement requests "contain fraudulent misrepresentations."  (Countercl. ¶ 33.)  The nearest State Farm comes to describing the content and character of these remaining "fraudulent misrepresentations" consists of one broad and patently imprecise allegation, which provides:

> It was further part of the conspiracy and scheme to defraud that many of the examinations, physical therapy modalities, chiropractic treatments, testing, consultations and/or other treatments purportedly provided at Allied to individuals involved in motor vehicle accidents . . . *were not provided, not provided for the medical necessity and/or benefit to the patient, misrepresented, not reimbursable under applicable law and/or not provided pursuant to applicable law*.

(*Id.* ¶ 19 (emphasis added).)  State Farm's liberal use of the phrase "and/or" creates alternative misrepresentations on which State Farm attempts to base its fraud claim.  Rather than placing counterclaim-defendants "on notice of the precise misconduct with which they are charged,"

counterclaim-defendants must defend multiple theories. *Seville*, 742 F.2d at 791. Rule 9(b) is intended to eliminate this type of guesswork. *Id.* Therefore, because State Farm does not "adequately describe[] the nature and subject of the alleged misrepresentation" for the remaining reimbursement requests, State Farm does not satisfy the heightened pleading requirement of Rule 9(b) for any request not listed in paragraphs nineteen or twenty-five. *Id.*; *see, e.g.*, *State Farm Mut. Auto. Ins. Co. v. All-Care Chiropractic*, No. 04-175, 2004 WL 1047827, at *1-2 (E.D. Pa. May 6, 2004) (finding, in an insurance fraud case, that plaintiff had alleged the nature of the fraud, but dismissing pursuant to Rule 9(b) because plaintiff did not identify the "particular misrepresentations" in the "bills and records" on which plaintiff based its fraud allegations), *vacated in part on other grounds*, No. 04-175, 2004 WL 1446033 (E.D. Pa. June 28, 2004).

In summary, I will deny counterclaim-defendants' motion to dismiss with respect to the reimbursement requests listed in paragraphs nineteen or twenty-five or both, but I will grant counterclaim-defendants' motion to dismiss the balance of Count I.[7]

### 2. Count II: Statutory Fraud

Counterclaim-defendants argue that Rule 9(b)'s heightened pleading requirement applies to State Farm's state statutory fraud claim, and that Count II should be dismissed for the same reasons as Count I. State Farm does not contest the applicability of Rule 9(b). Rather, State Farm presents the same argument it did for Count I.

---

[7] Counterclaim-defendants embedded a motion for a more definite statement in their motion to dismiss to Count I. (*See* Countercl.-Defs.' Mot. Dis. Countercl. at 23 n.6 (Doc. 41).) Given the above-discussed resolution of the motion to dismiss, I will deny the motion for a more definite statement because: (1) as to the reimbursement requests listed in paragraphs nineteen or twenty-five or both, I found that State Farm pleaded with particularity—a more definite statement is not required; and (2) as to the reimbursement requests listed in neither paragraph nineteen nor paragraph twenty-five, the motion for a more definite statement is moot.

Pennsylvania's Insurance Fraud Statute, 18 Pa. Con. Stat. § 4117, creates a private cause of action to remedy various types of insurance fraud. *See* § 4117(g). As § 4117 sounds in fraud, the Rule 9(b) particularity requirement applies. *See, e.g.*, *Champlost Fam. Med. Prac. P.C. v. State Farm Ins.*, No. 02-3607, 2003 WL 115475, at *1-2 (E.D. Pa. Jan. 9, 2003) (applying Rule 9(b) standard to § 4117 claims); *Am. Health Sys., Inc. v. Visiting Nurse Assn. of Greater Philadelphia*, No. 93-542, 1994 WL 314313, at *10 (E.D. Pa. June 29, 1994) (same); *cf. United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 n. 9 (3d Cir. 2004) (reminding that False Claims Act counts must be pleaded with particularity).

State Farm asserts that counterclaim-defendants violated § 4117(a)(2), (a)(3), (a)(5), (a)(6), (b)(2), and (b)(3). All four claims under § 4117(a) concern counterclaim-defendants' alleged fraudulent misrepresentation(s) and the purported benefits derived therefrom.[8] The

---

[8] Section 4117(a) provides in relevant part:
a) Offense defined.—A person commits an offense if the person does any of the following:
. . .
(2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.
(3) Knowingly and with the intent to defraud any insurer or self-insured, assists, abets, solicits or conspires with another to prepare or make any statement that is intended to be presented to any insurer or self-insured in connection with, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.
. . .
(5) Knowingly benefits, directly or indirectly, from the proceeds derived from a violation of this section due to the assistance, conspiracy or urging of any person.
(6) Is the owner, administrator or employee of any health care facility and knowingly allows the use of such facility by any person in furtherance of a scheme or conspiracy to violate any of the provisions of this section . . . .

averments within Count II involving the § 4117(a) claims track the appropriate statutory language, but do not insert any additional particularity to State Farm's allegations of fraud. Thus, I am left to review the same provisions as I did in the previous section. For the same reasons discussed in the previous section, I find that State Farm has pleaded facts that support § 4117(a) claims only as to the reimbursement requests enumerated in paragraphs nineteen or twenty-five or both.

Subsections (b)(2) and (b)(3) are best described as anti-kickback provisions.[9] As with its § 4117(a) claims, to support its (b)(2) and (b)(3) claims, State Farm simply recites the appropriate statutory text. State Farm offers no particular averments in Count II to supplement the statutory language. Therefore, the averments that are specific to Count II do not satisfy the pleading standard for the § 4117(b) claims. When peering outside of Count II for support, I find

---

[9] Sections 4117(b)(2) and (b)(3) provide:
(b) Additional offenses defined.—
. . .
(2) With respect to an insurance benefit or claim covered by this section, a health care provider may not compensate or give anything of value to a person to recommend or secure the provider's service to or employment by a patient or as a reward for having made a recommendation resulting in the provider's service to or employment by a patient; except that the provider may pay the reasonable cost of advertising or written communication as permitted by rules of professional conduct. Upon a conviction of an offense provided for by this paragraph, the prosecutor shall certify such conviction to the appropriate licensing board in the Department of State which shall suspend or revoke the health care provider's license.
(3) A lawyer or health care provider may not compensate or give anything of value to a person for providing names, addresses, telephone numbers or other identifying information of individuals seeking or receiving medical or rehabilitative care for accident, sickness or disease, except to the extent a referral and receipt of compensation is permitted under applicable professional rules of conduct. A person may not knowingly transmit such referral information to a lawyer or health care professional for the purpose of receiving compensation or anything of value. Attempts to circumvent this paragraph through use of any other person, including, but not limited to, employees, agents or servants, shall also be prohibited.

that, at most, State Farm asserts the existence of an incentive structure through which unidentified persons received some benefit for furthering counterclaim-defendants' insurance fraud scheme. However, State Farm does not plead facts to describe the nature or type of incentives used or to whom such incentives were given. Moreover, in Count II, State Farm does not even identify with sufficient clarity which of the counterclaim-defendants had a role in paying the proscribed kickbacks. Instead, State Farm alleges that "[e]ach Counterclaim Defendant, *or in the alternative many*" of the counterclaim-defendants participated in paying kickbacks. Overall, State Farm leaves too many holes for counterclaim-defendants to fill. Such imprecise pleading does not satisfy the requisite pleading standard, and I will grant counterclaim-defendants' motion to dismiss Count II to the extent that State Farm invokes § 4117(b).

In summary, I find that State Farm has sufficiently pleaded claims under only § 4117(a) and only as to those reimbursement requests itemized in paragraphs nineteen or twenty-five or both. I will deny counterclaim-defendants' motion to dismiss this portion of Count II, but will grant their motion with respect to the balance of Count II.

### 3. Count III: Unjust Enrichment

Counterclaim-defendants argue that State Farm's unjust enrichment claim (Count III) is premised on mistake of fact, and therefore is subject to Rule 9(b). Again, State Farm does not contest the applicability of Rule 9(b); rather, State Farm asserts that it has pleaded facts sufficient to survive a Rule 9(b) challenge.

Rule 9(b) applies to allegations of fraud and *allegations of mistake*. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (reminding that Rule 9(b) applies in "all averments of fraud or mistake"). In Count III, State Farm avers that it reimbursed counterclaim-defendants

"by reason of [a] mistake of fact." (Countercl. ¶ 61.) Moreover, the mistake of fact itself is directly connected to the counterclaim-defendants' alleged fraudulent misrepresentations. (*Id.* ¶ 59 (incorporating previous fifty-eight averments including fraud claims); *see also id.* ¶ 60.) Because Count III relies on "mistake of fact" and is premised generally on State Farm's fraud allegations, I find that Rule 9(b) is applicable to State Farm's unjust enrichment claim.

Pursuant to the reasoning set forth in the previous sections, I find that State Farm has satisfied Rule 9(b)'s pleading requirement with respect to the reimbursement requests outlined in paragraphs nineteen or twenty-five or both. Though Count III does include a few unique averments (*Id.* ¶¶ 59-61), these averments do not insert the degree of particularity necessary to satisfy Rule 9(b) for any additional reimbursement requests. Thus, I will deny counterclaim-defendants' motion with respect to the reimbursement requests in paragraphs nineteen or twenty-five or both, and will grant the motion to the extent that State Farm seeks relief based on reimbursement requests no so enumerated.

    **B.**    **Affirmative Defenses**

        **1.**    **Nos. 2 and 6: Fraud and Misrepresentation**

State Farm's second affirmative defense, fraud, contains averments similar to its counterclaim. (Answer at 17-22.) State Farm's sixth affirmative defense states in full: "Allied made material misrepresentations regarding the treatment given to certain Allied Medical Associates' present and former patients whose bills were submitted to State Farm for payment."[10]

---

[10] State Farm does not specify in its answer whether its sixth affirmative defense raises intentional or negligent misrepresentation. In response to counterclaim-defendants' motion, however, State Farm argues that this affirmative defense is "part and parcel" of the "same fraudulent scheme pled in detail throughout the Answer." (Countercl.-pl.'s Mem. L. Opp'n Countercl.-defs.' Mot. Dis. at 3.) Because State Farm concedes that this affirmative defense

(*Id.* at 22.)   Counterclaim-defendants argue that neither affirmative defense satisfies Rule 9(b).

Pursuant to Rule 9(b), parties must plead with particularity whenever *alleging* fraud—including allegations of fraud contained in an affirmative defense. Fed. R. Civ. Pro. 9(b); *see, e.g.*, *Precimed S.A. v. Orthogenesis*, No. 04-1842, 2005 WL 991277, at *1 (E.D. Pa. Apr. 25, 2005). Here, both affirmative defenses fail to incorporate the counterclaim's averments and both fail to independently plead fraud or intentional misrepresentation with the requisite particularity. Specifically, although the second affirmative defense is similar to State Farm's counterclaim, it does not contain the same degree of precision. For example, as in its counterclaim, the second affirmative defense lists seventeen reimbursement requests. (Answer at 18, ¶ 6.) However, unlike the counterclaim wherein State Farm asserted that the requests contained charges for medical procedures that were not performed, the affirmative defense states more broadly that the requests sought reimbursement for procedures that "[were] not provided, not provided for the medical necessity and/or benefit to the patient, misrepresented, not reimbursable under applicable law, and/or not provided pursuant to applicable law . . . ." As I discussed above, this language is too imprecise to satisfy Rule 9(b). Likewise, in its sixth affirmative defense, State Farm merely asserts that Allied made misrepresentations regarding treatment. This assertion does not describe the "general content of the misrepresentation" and therefore does not satisfy the particularity requirements of Rule 9(b). *Lum*, 361 F.3d at 224.

Nonetheless, when viewing State Farm's pleading liberally, because State Farm

---

relies on fraud and intentional misrepresentations, I must apply Rule 9(b). *See McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 644 (E.D. Pa. 2008) ("Rule 9(b) requires a plaintiff to use specificity in pleading intentional misrepresentation in order to give defendants sufficient notice of the claims against them.").

incorporated its counterclaim into its answer and because the counterclaim satisfies Rule 9(b) with respect to certain reimbursement requests, I find that State Farm's second and sixth affirmative defenses satisfy Rule 9(b) to the extent that State Farm's counterclaim does. Therefore, I will grant in part and deny in part counterclaim-defendants' motion to dismiss the second and sixth affirmative defenses to the same extent that I granted in part and denied in part their motion to dismiss the counterclaim.

### 3. No. 15: "Bases Evident" in Evidence

State Farm's fifteenth affirmative defense states: "State Farm also incorporates the bases evident within the documents being produced by State Farm." (Answer at 24.) The court does not recognize "bases evident within the documents" as an affirmative defense, and will dismiss it accordingly. *See* Fed. R. Civ. Pro. 8(c)(1).

### 4. No. 17: Offset

State Farm's seventeenth affirmative defense states: "In the event plaintiff prevails on any of its claims, the amount of recoverable damages are offset/reduced by the amount of damages recoverable pursuant to . . . State Farm's counterclaim." (*Id.*) Counterclaim-defendants argue that this defense should be dismissed because State Farm's counterclaim does not satisfy the applicable pleading standard. Because I find that portions of the counterclaim do satisfy Rule 9(b), I will deny counterclaim-defendants' motion to dismiss State Farm's seventeenth affirmative defense.

## IV. Conclusion

In summary, I will deny counterclaim-defendants' motion to dismiss the fraud claim in Count I, the § 4117(a) claims in Count II, the unjust enrichment claim in Count III, and the

second and sixth affirmative defenses to the extent that these claims and defenses are based on those reimbursement requests specifically listed in paragraphs nineteen or twenty five or both. I will also deny counterclaim-defendants' motion to dismiss the seventeenth affirmative defense and counterclaim-defendants' motion for a more definite statement. I will grant the balance of counterclaim-defendants' motion. With the exception of the fifteenth affirmative defense, all dismissals will be without prejudice and State Farm is free to amend its answer within fourteen (14) days if it can do so consistent with Rule 9(b).

    An appropriate order follows.